# IN THE COURT OF APPEALS OF IOWA

No. 23-0987
Filed June 19, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**CHRISTOPHER LAVELLE MITCHELL,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Scott County, John Telleen, Judge.


     A criminal defendant seeks discretionary review of a ruling on his motion in arrest of judgment and challenges his sentence.  **AFFIRMED.**


     Martha J. Lucey, State Appellate Defender, and Ashley Stewart (until withdrawal) and Mary K. Conroy, Assistant Appellate Defenders, for appellant.

     Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.


     Considered by Tabor, P.J., and Badding and Buller, JJ.

2

**BADDING, Judge.**

Christopher Mitchell and his paramour-turned-accomplice robbed a Davenport winery in April 2022. The minutes of testimony show that during the robbery, Mitchell demanded cash from the register, told the employee he had a knife, and said he would rape and kill her. The employee handed over several hundred dollars in cash and sustained serious injuries when Mitchell and his paramour assaulted her. At one point, the employee threw a wooden stool at Mitchell's paramour and tried to escape. Mitchell and his paramour dragged the employee back into the winery, took her phone so she couldn't call for help, and confined her with violence and threats if she did not comply. Mitchell told his paramour, in reference to the employee: "If she tries to leave, stab the bitch." A passerby called 911. When police arrived, they found the employee screaming for help, injured and bleeding. Officers then found Mitchell and his paramour inside the winery; the duo tried to flee but were subdued by police. Officers found approximately $300 in wadded up cash on Mitchell but did not find the knife on him or at the scene.

The State charged Mitchell with kidnapping in the first degree, a class "A" felony in violation of Iowa Code section 710.2 (2021); robbery in the first degree, a class "B" felony in violation of section 711.2; and enhancements for using a dangerous weapon in violation of section 902.7 and as a habitual offender in violation of sections 902.8 and 902.9.

In April 2023, the district court held a final pretrial conference about a week before trial was scheduled. The assistant county attorney explained the State's plea offer: Mitchell would plead guilty to third-degree kidnapping and first-degree

robbery and the State would dismiss the sentencing enhancements. The prosecutor explained Mitchell would trade a potential sentence of life in prison without parole for a maximum thirty-five-year sentence with no more than a seventeen-and-a-half-year mandatory minimum. The prosecutor also summarized Mitchell's criminal history and the substantial evidence against him[1] and argued that Mitchell's prior convictions for second-degree robbery may be admissible if he testified at trial. Mitchell told the court he had discussed the offer with his attorney and rejected it.

After this exchange, Mitchell's attorney asked if Mitchell wanted to discuss the offer with his family members in the gallery. Everyone but a deputy sheriff left the courtroom so that Mitchell and his family could talk. Fourteen minutes later, court reconvened, and Mitchell's counsel explained his client had discussed the offer with his family but still wanted to go to trial. Mitchell then said he wasn't sure, and the prosecutor agreed to keep the offer open until 4:00 p.m.

Almost three hours later, Mitchell signed a plea agreement embodying the deal from earlier in the day. The court then had an extended colloquy with Mitchell: he agreed that he had enough time to discuss the agreement with his lawyer, he was guilty of the crimes charged, the minutes of testimony were substantially accurate, and he understood the applicable penalties. Mitchell told the court no one was "forcing" or "threatening" him to plead guilty, and no one had "made any

---

[1] That evidence included Mitchell's admission on a recorded jail call that the incident was a "snatch and grab" robbery. A transcript of the call was attached to additional minutes of testimony filed by the State before Mitchell's guilty plea. In addition, the prosecutor stated at the hearing that Mitchell's paramour was expected to testify that, immediately before Mitchell entered the winery, he said, "I'm going to hurt her real bad," referring to the employee.

promises or predictions" about sentencing. In a voluntariness colloquy, he informed the court he was thirty-six years old, had a high school equivalency diploma, and had some college-level trade education. The court found Mitchell's plea was entered knowingly, voluntarily, and intelligently.

Mitchell filed a motion in arrest of judgment about a month later, asserting he "was emotional and felt pressure to enter into the guilty plea," and he still "maintain[ed] his innocence." The district court considered that motion on the record before sentencing. Mitchell described the events leading up to the plea and said he pled guilty because of pressure from his parents, noting his mother cried and his father punched a wall in frustration. The court denied the motion, finding the plea was voluntary and not coerced. While the court observed "the State and the victim are entitled to finality in these matters," the court reiterated "the primary reason" it was denying the motion was because the plea was voluntary.

At sentencing, the State recommended consecutive sentences based on the nature of the offenses, Mitchell's criminal history, and that Mitchell committed these new offenses "very shortly after" he was paroled. Mitchell's attorney asked for concurrent sentences with a reduced mandatory minimum because of Mitchell's upbringing and the alleged lack of services he received on parole. The district court imposed a 70% mandatory minimum, with a lengthy explanation of its reasons for sentencing. As pertinent to this appeal, the court explained it ordered consecutive sentences based on the "clear danger to the community" posed by Mitchell and the "need[] to protect the public from assaults by [Mitchell] for as long a period of time as possible." Mitchell appeals.

## I.  Discretionary Review and the Motion in Arrest of Judgment

In motion practice before the supreme court, Mitchell sought to treat his notice of appeal as an application for discretionary review for a challenge related to his motion in arrest of judgment.  *See* Iowa R. App. P. 6.151 (allowing the appellate courts to treat certain papers as if the proper form of review had been sought) (renumbered from rule 6.108 as of Apr. 1, 2024).  The supreme court ordered the issue submitted with the appeal, and the State's brief urges us to deny the application.

As a threshold matter, we agree discretionary review is required for us to consider the merits of the court's denial of Mitchell's motion in arrest of judgment.  Iowa Code § 814.6(2)(f); *State v. Scott*, No. 20-1453, 2022 WL 610570, at *3–5 (Iowa Ct. App. Mar. 2, 2022) (contrasting good-cause appeal and discretionary review).  Had he filed a traditional application for discretionary review, Mitchell would have needed to "state with particularity the grounds upon which discretionary review should be granted."  Iowa R. App. P. 6.106(1)(e) (renumbered from rule 6.106(1)(d) as of Apr. 1, 2024).  Our case law concludes an application should only be granted if we find a criminal defendant "was not accorded substantial justice."  *See State v. Tutson*, No. 21-0990, 2022 WL 1236763, at *2 (Iowa Ct. App. Apr. 27, 2022) (quoting *Scott*, 2022 WL 610570, at *4).

Mitchell's claim that "his guilty plea was not voluntarily given but was the result of undue pressure from his family" is the type of claim that satisfies this "substantial justice" standard for granting discretionary review under section 814.6(2)(f).  *See, e.g.*, *id.* ("We agree that a claimed violation of the rule requiring a defendant to be apprised of the mandatory minimum punishment and

the maximum possible punishment satisfies the 'substantial justice' standard for granting discretionary review."); *Scott*, 2022 WL 610570, at *5 (granting discretionary review of defendant's motion in arrest of judgment claiming "that difficulty maintaining his medications affected his ability to enter knowing and voluntary pleas"); *State v. Kershner*, No. 20-1506, 2021 WL 3661403, at *1 (Iowa Ct. App. Aug. 18, 2021) (granting discretionary review where defendant claimed "he was not 'in the right state of mind' when he pled guilty" and thought that he would be sent to the Oakdale Classification Center immediately after his plea); *see also* Iowa R. Crim. P. 2.8(2)(b) ("The court shall not accept a guilty plea without establishing that the plea is made voluntarily and intelligently. . . ."); *State v. Dee*, 218 N.W.2d 561, 563 (Iowa 1974) ("An involuntary or coerced plea will not support a judgment and sentence."). It is different in kind from cases where we have denied discretionary review because the motion in arrest of judgment was not timely filed, *see State v. Walker*, No. 23-0021, 2023 WL 8801627, at *1 (Iowa Ct. App. Dec. 20, 2023), error was not preserved on the claims raised on appeal, *see State v. Mosley*, No. 20-0175, 2021 WL 4889070, at *3 (Iowa Ct. App. Oct. 20, 2021), or the appellate brief did not allege an actual deficiency in the plea proceeding, *see State v. Richardson*, No. 22-2041, 2023 WL 7391802, at *1 (Iowa Ct. App. Nov. 8, 2023). We accordingly grant Mitchell discretionary review of the district court's decision denying his motion in arrest of judgment.

On the merits of Mitchell's claim, we find the district court reasonably concluded that Mitchell "simply seem[ed] to have changed [his] mind" about pleading guilty rather than succumbing to pressure from his family. In denying Mitchell's motion in arrest of judgment, the court explained:

I recall very well at the conclusion of the *Frye* hearing that you said you did not want to, that you denied the plea, and you wouldn't take the offer. What happened then is that a man in the back of the courtroom, who I assume to be your father—

MR. MITCHELL: Yes, Your Honor.

THE COURT: . . . leaned forward with a look of sort of disgust on his face and said, "Take the plea." There were further discussions with you and your family members. I asked if you would like a chance to meet privately or perhaps your attorney asked if you could have time to meet privately. And I said, "Yes."

So I left the courtroom. My court reporter left the courtroom. Everybody left the courtroom except you, your attorney, and your family members and, of course, a sheriff's deputy.

You had a lengthy discussion. It was way more than five minutes. It was—as I am recalling, your discussion lasted over lunch, because I went to lunch. I came back, and then I learned that you had decided to accept the plea offer. And then we proceeded to have a plea proceeding, which I am convinced was entirely voluntary.

. . . .

You have not proven anything here today. You simply seem to have changed your mind. I do not accept the fact that you were pressured into taking the plea deal. I—I detected none of that pressure. Your family members did encourage you to take the deal. But as I indicated, I continued the hearing, and it was at least . . . two and half hours between when you originally rejected the plea deal and when you came back in and voluntarily entered the plea of guilty.

I believe that you came back in later and pled guilty, because you were, in fact, guilty. And because the plea deal offered by the State was so much more favorable than the life without parole that you would have been likely to receive had you proceeded to trial on the kidnapping first degree charge.

The transcript from the plea proceeding, where Mitchell confirmed that no one was "forcing [him] or threatening [him] to plead guilty," supports the court's recollection. We conclude the court did not abuse its discretion in denying Mitchell's motion in arrest of judgment. *See State v. Petty*, 925 N.W.2d 190, 194 (Iowa 2019).

## II.    Abuse of Discretion at Sentencing

Mitchell's other claim on appeal asserts the district court abused its discretion when it imposed consecutive sentences. He argues the consecutive term was "unduly harsh."

"[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters."  *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).  "[O]ur task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds."  *Id.* at 725.

Here, the district court was explicit that its reasons for imposing consecutive sentences were grounded in public-safety concerns with the goal of protecting the community from Mitchell's dangerous conduct as long as possible.  This is a proper sentencing consideration.  *See* Iowa Code § 901.5 (directing the sentencing court to consider "the protection of the community from further offenses by the defendant and others").  Mitchell has not proven an abuse of discretion.

**AFFIRMED.**

Tabor, P.J., concurs; Buller, J., partially dissents.

**BULLER, J. (dissenting in part).**

Does a guilty-plea appeal get much more frivolous than when a defendant changes his mind after the fact? The majority opinion goes out of its way to deploy our court's extraordinary jurisdiction and grant discretionary review to reach that very question, only to conclude the district court was right this defendant "simply seem[s] to have changed [his] mind" about pleading guilty. Exercising our extraordinary jurisdiction to decide this issue is contrary to legislative intent, an abuse of the discretion granted to us by the elected branches, and a waste of judicial resources. I dissent from granting discretionary review.

The General Assembly "amended [Iowa Code] section 814.6 [(2021)] to curtail frivolous appeals from guilty pleas and thereby enforce their finality." *State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020). But the statutory change also added a safety valve, allowing discretionary review for certain claims raised by motion in arrest of judgment, so that we can address claims that truly warrant appellate review. *See* Iowa Code § 814.6(2)(f). In other words, the elected branches entrusted our courts to judiciously exercise our extraordinary jurisdiction to hear guilty-plea appeals that raise meritorious issues. Granting review of meritless claims like this one betrays that trust and defies legislative intent by turning a statute intended to curtail frivolous appeals into an excuse to decide them.

I find no compelling reason to grant discretionary review, nor does the majority opinion. The rules of appellate procedure require an application for discretionary review "state with particularity the grounds upon which discretionary review should be granted." Iowa R. App. P. 6.106(1)(e) (renumbered from 6.106(1)(d) as of Apr. 1, 2024). This defendant made no real effort to argue

why his change of heart on the plea warrants extraordinary review. He at most suggests he was denied "substantial justice"—yet even the majority opinion summarily rejects his argument on the merits, block-quoting the district court ruling. And if the majority is suggesting this "type of claim" categorically warrants discretionary review, that is a rule no party has asked for and is one I believe turns the purpose of the statutory amendment to section 814.6 on its head.

On an institutional note, our supreme court receives a near-constant deluge of applications for exercise of its extraordinary jurisdiction, including petitions for writs of certiorari and applications for discretionary review or interlocutory appeal. In reviewing those papers, the supreme court polices appellate jurisdiction, and only a tiny fraction of the requests for extraordinary review are granted. I am confident this application would not have been granted under the supreme court's historical practice. The issue should not be treated differently now just because it happened to reach our court or accompanies a good-cause sentencing appeal.

Last, the practicalities. As a one-off, our court going out of its way to decide a single frivolous appeal may not be a big deal. But this court typically issues more than a thousand opinions per year, and most cases involving guilty pleas are routed here. Our resources are stretched thin. We are the court of last resort for most Iowans, and the time of our judges and staff is precious as we strive to "dispose justly of a high volume of cases." *See* Iowa Ct. R. 21.11. The majority's derogation of legislative intent and historical practice to decide this frivolous appeal squanders resources that could be devoted to other cases—the very reason the General Assembly amended section 814.6. I do not sanction the majority opinion's endeavor to open the gates to more meritless guilty-plea appeals.